Baldwin, J.
delivered the following as the opinion of the court:
The court, without considering whether it is competent for a court of equity to enforce the forfeiture of the life estate in slaves, incurred by the tenant for life’s removal of the slaves beyond the limits of the commonwealth, to the prejudice of the right of the remainderman or reversioner, is of opinion that the claim to such forfeiture on the part of Davis, the appellee’s testator, asserted in his first amended bill in regard to the slaves in the proceedings mentioned, removed from the commonwealth by Evans the intestate of the appellee Fox, was waived, after said Evans had brought back said slaves, by the consent of said Davis to discharge the restraining order of May 1822 against the effects of said Evans, and his proceeding afterwards by his second amended bill, and the injunction and restraining order of May 1823 obtained thereupon, to prevent the said Evans from again removing the said slaves out of the commonwealth. And the court is further of opinion that the effect of the injunction against the removal of the slaves, granted by the last mentioned order, and of the bond given by said Evans with the defendant Turner as his surety, under the provisions thereof, conditioned to have said slaves forthcoming to answer the decree of the court, would have been to secure to the said Davis the relief sought by his second amended bill, inasmuch as the court, upon the hearing of the cause, could have directed that said Evans should give bond and security conditioned against the removal of the slaves from the commonwealth, and in the event of his failure, that the slaves should be kept within the *736 power and under the control of the court. And the court is further of opinion that the subsequent conduct of said Turner, after he had obtained possession of the slave Esther from said Evans, and while bound as his surety as aforesaid, and of course with a full knowledge of said Davis's claim, in causing said Esther to be removed and sold beyond the reach of the court, was in contempt and subversion of its authority, and that it was competent for the court to give the only redress within its power, and to vindicate its jurisdiction, by decreeing against said Turner, to the parly injured, the value of the reversion in said slave Esther; and that said conduct of said Turner was moreover a breach of the condition of the bond executed as aforesaid by said Evans with said Turner as his surety, which subjected the said Evans also to the like decree. And the court is further of opinion that the appellant, by his agency in the removal and sale of said slave, would have subjected himself also to the like decree, if he had known at the time of the claim of said Davis, and had confederated with said Turner to defeat the same; but that such knowledge and confederacy have not been established by the evidence in the cause. The court is therefore of opinion that the said decree is erroneous in giving any relief against the appellant, and is moreover erroneous in the measure of relief given against said Turner and the administrator of said Evans, inasmuch as the same should have been not for the value of the slave Esther, but for the value of said Davis's reversionary estate in her, which ought to have been ascertained by reference to a commissioner. It is therefore ordered and decreed that the said decree of the circuit court be reversed with costs. And this court proceeding to render such decree in regard to the appellant as ought to have been rendered by the said circuit court, it is further ordered and decreed that the fifth amended bill of the appellee be dismissed as to *737 the appellant, but without costs. And the cause is remanded to the said circuit court, to be there further proceeded in, as regards the other defendants, according to the principles above declared.

The statutes of Virginia bearing upon the case are in 1 R. C. of 1819, ch. 111. § 48. 49. p. 431, 2. They are as follows:
§ 48. “ If any person or persons possessed of a life estate in any slave or slaves shall remove, or voluntarily permit to he removed, out of this commonwealth, such slave or slaves, or any of their increase, without the consent of him or her in reversion or remainder, such person or persons shall forfeit every such slave or slaves so removed, and the full value thereof, unto the person or persons that shall have the reversion or remainder thereof; any law, custom or usage to the contrary notwithstanding.”
*733 § 49. “ If any female possessed as aforesaid shall be married to a husband who shall remove, or voluntarily permit to be removed, out of this commonwealth, any such slave or slaves, or any of their increase, without the consent of him or her in reversion or remainder, in such case it shall be lawful for him or her in reversion or remainder to sue for, recover and possess such slave or slaves so removed, for and during the life of the said husband; who shall moreover be liable to the action of the person or persons entitled to the reversion or remainder thereof, for the full value of the slave or slaves so removed.”